## AQUILA H. PICKERING

*v.*

## JOHN A. LOMAX *et al.*

*Filed at Ottawa March 22, 1887.*

1.  INDIAN TITLES TO LANDS—*permission of the President, as a condition to the right of alienation—whether a limitation upon the fee.*   A condition in an Indian treaty, and in a clause in a patent for land granted under the treaty to a person of Indian descent, that the land shall never be leased or conveyed by the patentee, or any of his heirs, to any one, without the permission of the President of the United States, is not void as being a limitation upon the fee.

2.  SAME—*effect of conveyance without such permission—and of approval by the President after conveyance.*   Under article 4 of an Indian treaty between the United States and certain Indian tribes, made in 1829, two sections of land in this State were granted to A. R., for himself and children, with the stipulation that such lands should never be leased or conveyed by the grantees, or their heirs, to any person whatever, without the permission of the President of the United States, and the patent contained a similar limitation.   A partition was had between A. R. and his children, and J. R., one of the children, on August 3, 1858, by his deed conveyed to H. the part set off to him in severalty.   Afterward, on January 21, 1871, the President of the United States indorsed upon this deed his approval:   *Held*, that the deed of J. R. to H. was void, and passed no title, and that the subsequent permission of the President indorsed thereon did not make it valid.

3.  TAX TITLE—*by whom it may be acquired.*   A person in the actual possession of land, and whose legal duty it is to pay the taxes thereon, can not acquire a tax title, growing out of his own neglect of duty.   But a person in possession of land, having no title, and under no obligation to pay the taxes, may acquire a tax title thereto.

4.  SAME—*notice of application for judgment—description of land.*   In order to give the county court jurisdiction to render judgment against land for taxes, the land must be properly described in the collector's notice of the application for judgment.   Without such a description as will identify the land, the notice will confer no jurisdiction.

5.  A collector's notice of application for judgment against delinquent lands for taxes, described one of the tracts as follows:   "Except 12.64 acres in the south-east corner of sub-lot 1, lot 1, in north section Robinson's reserve:"   *Held*, that the notice was meaningless, and void for uncertainty in the description of the land.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. .

Messrs. BISBEE, AHRENS & DECKER, for the plaintiff in error:

There are some reported cases in which provisions similar, in some respects, to those of the treaty under consideration have been discussed or construed. So far as we have been able to discover, the only cases throwing any light upon the subject are the following: *Smith* v. *Stevens*, 10 Wall. 321; *Harris* v. *Doe*, 3 Ind. 494; *Lowrey* v. *Weaver*, 4 McLean, 82; *Ex dem. Godfrey* v. *Beardsley*, 2 id. 412; *Murray* v. *Wooden*, 17 Wend. 531; *Jackson* v. *Wood*, 7 Johns. 295; *Chandler* v. *Edson*, 9 id. 362; *Goodell* v. *Jackson*, id. 486; *Sunal* v. *Hepburn*, 1 Cal. 254; *Stevens* v. *Smith*, 2 Kan. 243; *Chinnubbee* v. *Nicks*, 3 Porter, (Ala.) 362; *Harmon* v. *Porter*, 12 S. & M. 425.

If plaintiff in error acquired no title or right through the Robinson conveyance, then he was under no obligation to pay taxes, and had the same right as any stranger, to acquire a tax title. *Seaver* v. *Cobb*, 98 Ill. 200.

There is no such uncertainty in the description in the tax deed, and the notice of sale, as to be fatal. It was treated in the court below as a variance between the description in the notice and in the judgment record. The real question is, whether the description in the notice describes anything. If it does, it is no variance. We contend that, within established rules, the description can be construed. *Kruse* v. *Wilson*, 79 Ill. 233; *Kile* v. *Town of Yellowhead*, 80 id. 208; *Smith* v. *Crawford*, 81 id. 396.

Mr. P. T. McELHERNE, and Mr. ROBERT HERVEY, for the defendants in error:

It is submitted by defendants in error, that the prohibition in the patent to Robinson, against his conveying or leasing, or conveyance or lease by his heirs, without the permission

of the President of the United States, is an absolute limitation upon it. The word "permission" signifies sanction in advance. The leave of the President to the making of the proposed conveyance must be had, and without it no title passes.

When the deed from Robinson to Horton was presented to the President for approval, Horton had long been dead. What title his administrator could convey, had long been conveyed. The heirs of Horton, if any one, acquired title, if any could be held to pass by the approval of President Grant, in 1871, when the title had passed through so many hands.

At the date of the tax sales, and the deeds thereunder to Combs, the plaintiff in error claimed to own the lands in question in fee simple absolute. Can it be tolerated that he should allow lands of which he claimed to be the owner, to be sold for taxes, afterward acquire the tax titles in his own name, and thus attempt to fortify his title? That, we submit, can not be permitted. The plaintiff in error claimed to own the lands when they were sold for taxes, and he claims now to own them, and has endeavored to make proof of a title direct, traced from the patentee. A man so situated can derive no benefit from a tax deed.

The tax deed was properly excluded, in addition, on the ground of variance between the judgment and the notice. The judgment describes one parcel of land, the notice another; and the counsel for plaintiff in error can only overcome this obstacle by asking the court to change the notice. This can hardly be done.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by Aquila H. Pickering, against John Lomax and William Kolze, to recover two certain parcels of land in Cook county, which are particularly described in the declaration. The parties waived a jury, and submitted to a trial before the court, which resulted

in a judgment in favor of the defendants, and the plaintiff sued out this writ of error.

On the trial, for the purpose of establishing title, plaintiff offered in evidence article 4 of the treaty between the United States and the Ottawa, Chippewa and Potawatamie Indians, contained in the United States Statutes at Large, volume 7, page 321:

"There shall be granted by the United States to each of the following persons, (being descendants from Indians,) the following tracts of land, viz: To Claude Laframboise, one section of land on the Riviere Aux Pleins, adjoining the line of the purchase of 1816; to François Bourbonne, Jr., one section at the missionary establishment on the Fox river of the Illinois; to Alexander Robinson, for himself and children, two sections on the Riviere Aux Pleins, above and adjoining the tract herein granted to Claude Laframboise. The tracts of land herein stipulated to be granted, shall never be leased or conveyed by the grantees, or their heirs, to any persons whatever, without the permission of the President of the United States."

The plaintiff also put in evidence a copy of a patent issued by the United States, December 28, 1843, under the provisions of the treaty granting the lands to Alexander Robinson, for himself and children, which contains this provision: "But never to be leased or conveyed by him, them, his or their heirs, to any person whatever, without the permission of the President of the United States." Plaintiff also introduced in evidence proceedings in partition, instituted February 22, 1847, in the Cook county Court of Common Pleas, between Alexander Robinson and his children, of the lands granted by the patent, wherein the lands in question were set off to Joseph Robinson. The plaintiff also introduced evidence tending to establish the following conveyances: Deed dated August 3, 1858, from Joseph Robinson and wife to John F. Horton; administrator's deed of Severn Stevens, adminis-

trator of John F. Horton, deceased, to Moses W. Baer, dated October 6, 1863,—this deed having been made in pursuance of an order of sale, by the county court of Cook county, for payment of debts. Then followed several intermediate conveyances of the premises, down to a deed dated November 10, 1866, from Henry H. Dyer and wife to Aquila H. Pickering, the plaintiff. The deed from Robinson and wife to Horton, executed August 3, 1858, has endorsed upon it the approval of the President of the United States, of date January 21, 1871.

The treaty under which the lands were granted to Alexander Robinson and his children, was concluded on the 29th day of July, 1829. Whether the deed executed August 3, 1858, from Joseph Robinson and wife to John F. Horton, without the permission of the President of the United States, was sufficient to pass the title to the lands attempted to be conveyed, involves a construction of the last clause of the treaty set out above, and also that clause of the patent prohibiting a conveyance without permission of the President. The object of the condition, in restraint of a sale, is manifest. It was designed for the benefit and protection of the Indian, as a safeguard to protect property bestowed upon him, against fraud, imposition, and his own improvidence in the disposition of his lands. The wisdom of such a provision, in view of the condition of the Indian at the time, and his liability to be defrauded out of his property unless the protecting hand of the government was interposed in his behalf, is not, nor can it be, questioned. It is true that the patent issued to Robinson granted the fee in the lands, and we are not unmindful of the fact that a limitation upon the fee, as a general rule, is contrary to the policy of our law. But we think it is well settled, in a case of this character, that effect will be given to conditions imposed in a treaty, and a patent issued by the government in pursuance of a treaty made with the Indian tribes. The patent under which Robinson and his children derived their title to the land, prohibits a lease or

conveyance of the land, by all or either of them, without the permission of the President of the United States. The grant was made in pursuance of a treaty between the government and the Indian tribes, upon this condition. This mode of conveyance having been provided, by necessary implication any other is prohibited, and being prohibited, it would seem to follow that the deed was invalid, and passed no title.

A case in many respects similar to this, is *Smith* v. *Stevens,* 10 Wall. 321. There, a treaty was concluded by the United States, in June, 1825, with the Kansas Indians. The sixth article provided, that there should be reserved to each of the half-breeds (Victoria Smith being one of them) certain lands. The eleventh article provided, that the Indians shall never sell or dispose of the lands reserved, without the permission of the United States for that purpose first had and obtained. On May 26, 1860, Congress passed an act referring to the treaty of 1825, and reciting that the land reserved had been surveyed, and allotted to each of certain half-breeds, in accordance with the sixth article of the treaty; that all the title, interest and estate of the United States is hereby vested in said reservees. The second section of the act provided, that the Secretary of the Interior, upon the request of the reservees, is authorized to sell such lands for the benefit of such reserves, in accordance with rules and regulations to be prescribed by the Commissioner of Indian Affairs, and approved by the Secretary of the Interior. On the 14th day of August, 1860, Victoria Smith, one of the half-breeds, being in possession of her tract, executed a deed purporting to convey it to one Stevens, and he went into possession of the land. Subsequently, Victoria Smith brought ejectment against Stevens, to recover the land. As a defence, he relied upon the deed of August 14, 1860, but the State courts of Kansas held the deed was void, and this ruling was affirmed in the Supreme Court of the United States.

In the case cited, the treaty provided that the lands reserved should not be conveyed without the consent of the United States, and the act of Congress, subsequently passed, vested the title in the Indians or half-breeds, and provided for a sale by the Secretary of the Interior, on request of the Indians. This mode of sale was disregarded, and an absolute deed made without the consent of the Secretary of the Interior, while in the case under consideration the treaty and patent require the consent of the President to a sale. It seems plain that the rule which should control one case should be binding in the other. In disposing of the case in the Supreme Court, it is said: "It was considered by Congress to be necessary, in case the reservees should be desirous of relinquishing the occupation of their lands, that some method of disposing of them should be adopted which would be a safeguard against their own improvidence; and the power of Congress to impose a restriction on the right of alienation, in order to accomplish this object, can not be questioned." It is also said: "The sale in question not only contravened the policy and spirit of the statute, but violated its positive provisions." The conclusion of the court is, that under the treaty and law in force at the date of the deed, Victoria Smith had no power to sell, and as the Secretary of the Interior never authorized the sale or consented to it, the sale was void, and the deed passed no title. Here, the deed was made, as was said before, without the permission of the President, and in violation of the treaty and the provisions of the patent, and if no title passed in the case cited, as was held, for the same reason we must hold no title passed in this case. It is true that thirteen years after the deed in question was made, and after the death of the grantee, it was approved by the President; but we do not regard this as a compliance with the conditions upon which a sale might be made. The sale was consummated, if at all, upon the execution and delivery of a deed. The validity of this act required the consent of the President. It was not

obtained, and the act was nugatory, and could not be validated by any subsequent attempted approval.

One other question remains to be considered. In addition to the chain of title just considered, plaintiff claimed title to the premises under a tax sale of 1875, for the taxes due on the premises for the year 1874. At the tax sale the property was purchased by Shepard, and upon the expiration of the time allowed for redemption, a deed was made to his assignee, Hiram Combs, who conveyed to the plaintiff. On the trial, the delinquent list, judgment for taxes, precept, certificate of sale, notice to occupant, affidavit for deed, and deed, were put in evidence.

Two objections are urged against the sale,—first, as the plaintiff claimed to be owner, he was bound to pay the taxes, and could not acquire a tax title, and rely upon it as title to the premises. If the plaintiff had been in the actual possession of the land under claim of title, the law would require him to pay the taxes, and it being his duty to do so, it may be true that in such case he could not profit by a disregard of a legal duty, by allowing the land to go to sale, and thus acquire a tax title. But the plaintiff was not in the possession of the land, and he did not have title, as we have shown, and he was under no obligation to pay the taxes on land he did not own, and being under no obligation to do so, we see no reason why he might not purchase a tax title on the land, and rely on such title, as well as any other person not interested in the premises. *Seaver* v. *Cobb*, 98 Ill. 200.

The second objection urged, is a variance between the notice of the application for judgment, and the judgment, as respects a description of the premises. In the delinquent list, judgment and precept, the premises were described as follows, which we understand to be the correct description,—the tract first described being the one under consideration, no question having been raised as to the second tract:

| NAME. | DESCRIPTION. | | | | | | | | Amount of judgment for taxes levied in 1874. | | Amount of judgment for back taxes and forfeiture to State, of 1873. | | Cost. | | Total am't of judgment. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Section | Town | Range | Lot | Sub-lot | Lot | Block | Acres | Dollars | Cents | Dollars | Cents | Dollars | Cents | Dollars | Cents |
| North section. Robinson's reserve... | | | | | | | | | | | | | | | | |
| Horton...... Ex. 12.64 Ac. in s. e. cor... | | | | | | 1 | 1 | 1 | 16 | 27 | 5 | 61 | 40 | 53 | 16 | 67 |
| J. Marshall... 12.64 Ac. in s. e. cor.... | | | | | | | | 12.64 | | 12 | | | | | | 11 26 |

We have not been able to find the publication notice in the record, but, in the argument, the description of the premises in the notice is conceded to be as follows: "Except $12\frac{64}{100}$ acres in the southeast corner of sub-lot 1, lot 1, in north section Robinson's reserve." Whether there may be a variance between the description in the notice and judgment, we do not regard as a question of any importance. The real question is, whether the premises are sufficiently described in the notice, — whether they were described in such a manner that the owner, in reading the notice, might ascertain, from the description, that an application would be made for judgment *against his lands if the taxes were not paid.* If the lands are not described in such manner that they may be known or identified from the description contained in the notice, the publication of notice required by the statute might as well be omitted. We regard the description of the land as one of the essential elements of a notice, and unless the

notice describes the land in such a manner that it may be identified from that description, the court had no jurisdiction to render a judgment against the land. Here, the judgment was rendered against sub-lot 1, lot 1, in Robinson's reserve, except $12\frac{64}{100}$ acres in the south-east corner, while the notice informed the owner that application for judgment would be made against a tract of land described as follows: "Except $12\frac{64}{100}$ acres in the south-east corner of sub-lot 1, lot 1, in north section Robinson's reserve." It is manifest that the description contained in the notice describes no lands. It is meaningless, and void for uncertainty, as it reads; and we are aware of no rule under which a court could properly reject anything contained in the notice, or add anything thereto, for the purpose of curing its defects. The notice being deficient, the court had no jurisdiction to render judgment against the land. (*The People* v. *Dragstran*, 100 Ill. 286.) It therefore follows, if the court had no jurisdiction, no title passed under the tax sale. The court did not, therefore, err in excluding the tax proceedings from the evidence.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHELDON, dissenting:

The cause was submitted to the court below for trial, without a jury. The plaintiff offered in evidence the following: The Indian treaty; a patent from the United States to Alexander Robinson, for land which included the tracts in controversy; a partition between Alexander Robinson and his children, wherein there was set off to Joseph Robinson, one of the children, the lands in controversy, made February 18, 1847; a warranty deed of August 3, 1858, duly recorded, conveying, for the consideration of $4100, from Joseph Robinson and his wife, to John F. Horton, the lands last named, to which deed is appended the approval of the President of the United States, dated January 21, 1871; an administrator's deed, from the administrator of the estate of Horton, to Moses,

W. Baer, dated October 16, 1863, consideration $318.53, duly recorded, conveying said lands,—the deed having been made in pursuance of an order of sale for payment of debts of said estate, made by the county court of Cook county. Then followed several intermediate conveyances of the premises, by warranty deeds, down to a warranty deed dated November 10, 1866, recorded November 23, 1886, from Henry H. Dyer and wife, to Aquila H. Pickering, the plaintiff, conveying, for the consideration of $1600, the same premises. At the close of the plaintiff's evidence, the defendants' counsel, without offering any evidence, moved the court that the plaintiff's testimony be excluded and the case dismissed, on the ground that the foundation of the plaintiff's title fails, in that the deed from Joseph Robinson to Horton, made in 1858, was made in direct violation of the terms of the patent as to obtaining the approval of the President of the United States, which motion the court sustained, and plaintiff excepted.

The plaintiff's counsel requested the court to hold the proposition of law, that it was not necessary to apply to the President of the United States for leave to convey; that the President had power to approve any deed Joseph Robinson might make, subsequent to its execution and delivery, and that such approval would make the deed valid. The court refused to so hold, to which the plaintiff excepted, and after overruling a motion for a new trial, the court gave judgment in favor of the defendants.

Joseph Robinson held the absolute fee in the land in question, under a patent from the United States, with the simple qualification that he or his children or heirs should not lease or convey the land without the permission of the President of the United States. We have in the case a warranty deed of the land, for a valuable consideration, made by Robinson, with an approval thereof by the President of the United States indorsed upon the deed. This, it is thought, effectuates a conveyance of the land from Robinson, and notwithstanding

the fact that the approval of the President was not obtained until at the considerable length of time which here appears, after the making of the deed. There appears the permission of the President, and that fulfills the condition for the making of the conveyance. This condition was designed for the benefit of the Indian, as a safeguard of his interest against fraud, imposition, and his own improvidence, in the disposition of his land. A supervisory care, in this respect, it was thought best should be exercised; and the measure of guardianship which it was seen fit to provide, was the President's permission to a conveyance of his land by the Indian. This granting of permission was a duty imposed upon the President, and no one else. How and when he should perform it, was for him to determine, and not for a court to adjudge. No time or form of granting the permission was prescribed. The President assumed to act in the discharge of the duty which was imposed upon him, by giving his sanction to the conveyance. Whether it was proper for him to do so at such a length of time after the making of the deed, was, it is conceived, for his sole determination.

A similar view was taken in respect of a like provision in the case of *Ex dem. Godfrey* v. *Beardsley*, 2 McLean, 412, where the permission was given before the deed was made. Justice McLEAN there said: "Neither the treaty nor any law prescribes the form in which this sanction (permission) should be given. The treaty imposed the duty upon the President, and he could execute it in such form and manner as his discretion should dictate. * * * Except by permission of the President, Pierre Moran could not convey this land. That permission was obtained before the deed was executed. Now, whether it would have been more judicious to have withheld the sanction until the execution of the deed, is a matter about which differences of opinion may exist. But whether given before or after the deed, it is equally within the power of the President."

In *Jackson* v. *Hill*, 5 Wend. 532, where, in order to the validity of a deed made by an Indian, the approbation of the surveyor-general was required by the law of New York, it was held that a deed made without such approval, but subsequently approved, was good from the time such approbation was in fact given. And see, to same effect, *Murray* v. *Wooden*, 17 Wend. 531.

I think the court erred in its rulings, and that the judgment should be reversed.