CHILDERS, *Plaintiff in Error*, v. SCHANTZ *et al.*

Division One, February 19, 1894.

1. **Practice**: ORDER OF PUBLICATION: NEW PARTY.   The mere addition of a party defendant after publication has been made, and who personally appears, does not make necessary a new order of publication.

2. ———: ———.   The finding of the trial court 'that the order of publication properly notified the defendants when to appear, *approved*.

VOL. 120—20

3. **Sheriff's Sale:** PURCHASER. A purchaser at a sheriff's sale looks to the judgment, execution, levy and sheriff's deed; all other questions are between the parties to the judgment and the sheriff.

4. ———: JUDGMENT AGAINST DEAD PERSON. A sheriff's deed, made pursuant to a sale under an execution issued on a judgment in an action against a person who was dead at its institution, conveys no title.

5. **Delinquent Taxes:** PUTTING TAX DEED OF RECORD: STATUTE. Section 7698, Revised Statutes, 1889, which provides that any person putting a tax deed on record shall be deemed to have set up such title as to enable the claimant to prosecute an action for the possession, has no application to a sheriff's sale under an execution issued on a judgment in a suit to enforce the state's lien for delinquent taxes.

6. ———: EXECUTION SALE: PURCHASER. The rule, that one in possession of land under claim and color of title shall pay the taxes and therefore can not acquire title by purchase at a tax sale, does not apply to a purchaser at an execution sale under a judgment for taxes where such purchaser did not take actual possession.

*Error to Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*Wm. O. Mead* for plaintiff in error.

(1) The first declaration of law asked for by the plaintiff should have been given; the court had and acquired no power or jurisdiction in the tax proceedings, under which the defendants hold, except by the order of publication, and that only notified the defendants in such tax proceedings of the petition then on file, and when the amended petition was filed it superseded the one of which they had notice and the court could not proceed further without again serving them with process. R. S. 1889, secs. 2107, 2108; *Ward v. Davidson*, 89 Mo. 445; *Tecknor v. Voorhies*, 46 Mo. 110; *Janney v. Spedden*, 38 Mo. 395. (2) When Crocket bought the land in question at tax sale under the judgment of the circuit court, and conveyed to Norman the grantor of the defendants and both deeds

were put to record, there was such assertion of title and possession as the owners of the adverse claim of title could maintain an action of ejectment against Norman and his motion setting up such claim at the time of the sale by the sheriff to him and procuring the order directing the sheriff to pay him the amount of his bid in excess of the judgment and costs, was such claim and possession as imposed upon him the duty of paying the taxes for which he had bought the land and by such purchase he did not acquire any title, but such purchase and deed only operated as a payment of the taxes, and the second, third and fourth declarations of law asked by the plaintiff, should have been given. Revised Statutes, 1889, sec. 7698; Black on Tax Titles, 137, 147, 148; *Smith v. Phelps*, 63 Mo. 585; *St. Joseph v. Saville*, 39 Mo. 460; *LeMoyne v. Harding*, 132 Ill. 23; *Lacy v. Davis*, 66 Am. Dec. 524; *Blake v. Howe*, 15 Am. Dec. 581. (3) The service by publication shown in the tax proceedings, under which defendants hold, is made returnable according to the record on the ——— Monday in November, A. D. 187—. The presumption of law is, that it was published as made and such order of publication is as much a part of the record as the judgment and is of equal dignity, and by it the judgment may be impeached as having been rendered without jurisdiction or power in the court to do so. *Hewett v. Weatherby*, 57 Mo. 276; *Brown v. Langlois*, 70 Mo. 226; *Otis v. Epperson*, 88 Mo. 131.

*Burton & Wight* for defendants in error.

(1) The amendment of the petition by interlineation, making J. F. Norman a party defendant, did not change the object and nature of the suit, and no other or different judgment was rendered against the defend-

ants notified by order of publication than that asked for in the original petition, and of which notice was given in said order of publication, hence no new order of publication was necessary. *Janney v. Spedden*, 38 Mo. 395; *Holland v. Adair*, 55 Mo. 40. (2) The judgment in State *ex rel. v.* James H. Godsey and James L. Nichols, rendered on May 16, 1878, was an absolute nullity for the reason that said James H. Godsey had been dead for sixteen years. (It was admitted that he died in 1862.) *Crosley v. Hutton*, 98 Mo. 196; *Graves v. Ewart*, 99 Mo. 13. Nichols never had any interest in the land. This is admitted by plaintiff in his statement. (3) Therefore, W. R. Crocket did not obtain any title to the land in question by deed of McGinnis, sheriff, of November 7, 1878, and his quitclaim deed of June 2, 1880, to J. F. Norman conveyed nothing. *Crosley v. Hutton*, 98 Mo. 196. (4) Said J. F. Norman never took possession. It is admitted that the land was unoccupied until the defendants in this cause took possession in August, 1885, hence it follows that J. F. Norman had a right to purchase the land at the sale upon the judgment in State *ex rel.* McGowan *v.* Elizabeth Banner *et al. Atkinson v. Dixon*, 89 Mo. 464; *Coxe v. Gibson*, 27 Pa. St. 160; *Blackwood v. Van Vleit*, 30 Mich. 118; *Lybrand v. Haney*, 31 Wis. 230. (5) The judgment roll being lost, the testimony of Rexrode, deputy clerk, was competent, from which it appears that the order of publication did designate the first Monday in November, 1880, and that the blank in the book was not changed through oversight. *Miner v. Shipley*, 94 Mo. 106; *McClanahan v. West*, 100 Mo. 309.

BLACK, P. J.—This was an action of ejectment for one hundred and sixty acres of land in Vernon county. James H. Godsey owned the land at the time of his

death.   He died in 1862, leaving a widow, Elizabeth, and two sons, namely, William E. and James H. Godsey.   The widow married John Banner.   She and Banner and the two sons conveyed the lands to the plaintiff in this suit by a quitclaim deed dated the fourth of February, 1888.

The defendants for title rely upon the following proceedings and deed:   In 1880 the collector commenced a suit against William Godsey, Elizabeth Banner and John Banner her husband, and the unknown heirs of James H. Godsey, to enforce the state's lien for taxes for the year 1878.   The defendants were notified by a vacation order of publication. At the return term, that is to say, November term, 1880, and after the order of publication had been made, the petition was amended by inserting the name of J. F. Norman as an additional defendant, and he entered his appearance.   Judgment was then entered against all the defendants, it being a judgment by default as to all except Norman who had appeared. The land was sold under a special execution issued on this judgment, and Norman became the purchaser, and received a sheriff's deed, dated fifth of May, 1881. All the title acquired by Norman passed through several persons by warranty deeds, to John C. Taylor, who conveyed to the defendants by warranty deed dated in August, 1885.   At that date the land was open prairie, unoccupied, and had never been fenced or broken.

The plaintiff, to defeat the above mentioned sheriff's deed to J. F. Norman, produced in evidence another sheriff's deed to William R. Crockett, dated the seventh of November, 1878, based upon a special execution issued upon a judgment rendered upon an order of publication in a suit of the collector against James H. Godsey and James L. Nichols, to enforce

the state's lien for delinquent taxes for the years 1869 to 1876, and a quitclaim deed from Crockett to J. F. Norman. These deeds were recorded in June, 1880. James H. Godsey died, it will be seen, some fifteen years before the commencement of the last mentioned tax suit, and Nichols, the other defendant, had no interest in the property.

1. We will first notice the objections made to the sheriff's deed to J. F. Norman, upon which the defendants rely for title. That deed stands upon the judgment in the suit instituted by the collector against William Godsey, Elizabeth Banner and John Banner, her husband, and the unknown heirs of James H. Godsey. The petition in that case, as has been said, was amended by adding the name of J. F. Norman as a defendant, after the publication against the other defendants had been made; and the first objection is that there should have been a new order of publication. This case is unlike that of *Janney v. Spedden*, 38 Mo. 395, to which we are cited. That was a suit to enforce a vendor's lien. Janney had been notified by publication only, and the plaintiff then dismissed his petition as to all that part asking for the enforcement of the lien, and on the order of publication took a personal judgment against Janney. The court held that the object and nature of the suit was wholly changed by discontinuing as to that part of the petition seeking the enforcement of a vendor's lien, and that the personal judgment rendered was void. Here the plaintiff amended by adding a new defendant, nothing more. The cause of action remained the same after, as before, the amendment. As the amendment did not in the least change the cause of action, it was not necessary to take out a new order of publication.

The next objection to this deed is that the order of publication is worthless because it did not notify the

defendants when to appear. The papers and files in that case were lost when this one was tried. That suit was commenced in 1880. The person who was deputy clerk at the time testified that a book was kept in the office known as the book of orders of publication in vacation; that the book contained printed forms with blank spaces for names of parties, description of land, dates, etc.; and that it was his custom to issue orders of publication and then copy them in this book, and send the originals signed, and under the seal of the court, to the printer. The copy of the order of publication, found in this book, produced in evidence, is conceded to be formal, except that part which is in these words: "And unless they be and appear at the next term of said court, to be holden at the court-house in the city of Nevada, in the county and state aforesaid, on the first Monday in November, *187*—, and on or before," etc. The deputy clerk testified further that he was satisfied the date was filled out in the order sent to the printer so as to read on the first Monday of November, *1880*, and that the blank in the book was not changed to correspond with the order by reason of some oversight.

There is here a manifest clerical error. According to the evidence of the deputy clerk, the original order was sent to the newspaper office, so that the order produced in evidence is but a copy and, therefore, secondary evidence. The evidence of the clerk tends to show that the original order specified the first Monday in November, 1880, as the date when the defendants should appear, and this conclusion is perfectly reasonable when we consider the fact that the copy in the book was made out by filling blank spaces in a printed form. It also appears from the recitals in the judgment that there was an affidavit of the publisher of the newspaper on file when the judgment by

default was entered, and that this affidavit was examined by the court. The usual practice is to attach a copy of the order as published to the affidavit, so that the inference is a fair one that the court examined the order as published before giving judgment by default.

The mistake was in the original order or in the copy or in both, and there is an abundance of evidence from which the court could find, as it did, that the mistake was in the copy produced in evidence and not in the original published order. The objection to the publication is, therefore, not well taken, because the court found the fact to be that the published order notified the defendants to appear on the first Monday of November, 1880.

2. It is next insisted that J. F. Norman acquired no title by the sheriff's deed to him, because he is to be deemed to have been in possession of the land at the date of that deed under a prior claim and color of title, and hence it was his duty to pay the taxes, and his purchase of the land under the tax suit judgment amounted to no more than a payment of them. Norman was not and never had been in actual possession. This is conceded. The claim that he is to be deemed to have had possession is based on section 7698, Revised Statutes, 1889, which provides, in substance, that any person putting a tax deed on record shall be deemed to have set up such title as to enable the claimant to prosecute an action for the possession. This section comes down from the revenue act of 1872, and the "tax deed" mentioned in it has reference to a collector's deed made under the provisions of that act. That section, therefore, has no application to a sheriff's deed made pursuant to a sale under an execution issued on a judgment in a suit to enforce the state's lien for delinquent taxes. Norman, therefore, did not have

actual or constructive possession when he purchased the land under the judgment against himself and the unknown heirs of James H. Godsey.

Though not in possession, it seems he made some claim to the land at that time; for the old sheriff's deed to Crockett and the quitclaim deed of the latter to Norman were of record at that date. Besides this, it appears Norman appeared in court on the same day that he purchased the property at the sheriff's sale, and moved the court to order the sheriff to pay over to him the amount which he bid in excess of the judgment and costs, that is to say, $38.44, and this motion was sustained. We are not called upon here to determine what effect claiming and obtaining this excess would have in a suit between Norman and the heirs of Godsey. "A purchaser at a sheriff's sale looks to the judgment, execution, levy and sheriff's deed. All other questions are between the parties to the judgment, and the sheriff." *Lenox v. Clarke*, 52 Mo. 115; *Hewitt v. Weatherby*, 57 Mo. 276. The same rule applies in favor of those who acquire title from the purchaser at the execution sale. The defendants were, therefore, not bound to take notice of the subsequent order directing the excess to be paid over to Norman.

The old sheriff's deed to Crockett, based upon the judgment in the tax suit against Godsey and Nichols, conveyed no title, because Nichols never had any interest in the land, and because Godsey was dead when that suit was commenced. *Graves v. Ewart*, 99 Mo. 17. And it follows that the quitclaim deed from Crockett to Norman conveyed nothing.

The facts, then, as to this branch of the case are that Norman was not in possession and had no title to the land when he purchased at the sale under the tax judgment against himself and the heirs of Godsey. That judgment simply ordered the land to be sold to pay the

tax thereon.   There was and could have been  no per-sonal judgment against the defendants or any of them. There was no  relation of confidence  or trust existing between him  and them and he was under no obliga-tion to them to discharge the tax lien.   If he did not acquire title by his purchase, it was because he was in duty  bound  to the  state to  pay the taxes, and  ought not to be allowed to make profit by  a disregard of  that duty.   It is generally held that one in possession under claim  and  color  of  title should pay the  taxes, and hence can  not acquire title by purchase at a tax sale. Black  on  Tax  Titles [2 Ed.], sec. 289.

The  same  author, when  speaking of those cases where one holding a tax title seeks  to strengthen it by a second purchase,  says:   "The cases  *  *  * found a distinction upon the  fact of  possession, and hold that the title of a tax sale purchaser, who is in possession under the deed, is not strengthened by suc-cessive purchases at  subsequent sales of the same land for taxes.  *  *  *  Consistently with the foregoing, it is also thought that one who holds a tax deed, whether valid or void, under which he has not gone into posses-sion,  may  abandon all claim of title under it, and acquire title under a deed for taxes assessed upon the land after he took such earlier deed."   Sec. 291. In the case of *Pickering v. Lomax*, 120 Ill. 289, which was an action of ejectment, the plaintiff claimed under a series of deeds from individuals.   For another title he put in evidence a tax deed based upon taxes which accrued while  he  made  claim to  the  land under  the  deeds from the  individuals.   As to this tax deed it was said:   "If the plaintiff had  been in the actual posses-sion of the land under claim of title, the law would require him to  pay the taxes,  and it being his duty to do so, it may be  true that in  such case he could not profit by a disregard of  a  legal duty, by allowing the

land to go to sale, and thus acquire a tax title.    But the plaintiff was not in the possession of the land, and he did not have title, as' we have shown, and he was under no obligation to pay the taxes on land he did not own, and being under no obligation to do so, we see no reason why he might not purchase a tax title on the land, and rely on such title, as well as any other person not interested in the premises." The following cases are to the same effect:    *Atkison v. Dixon*, 89 Mo. 464; *Lybrand v. Haney*, 31 Wis. 230; *Blackwood v. Van Vleit* 30 Mich. 118; *Coxe v. Gibson*, 27 Pa. St. 160.

There was, as we have said, no relation existing between Norman and the heirs of Godsey, which made it his duty to them to pay the taxes, and he was under no obligation to the state to pay them, for he was neither the owner of the land nor in possession; and we conclude he had a right to purchase at the sale made by virtue of the special execution, and that by such purchase he acquired the title of his codefendants. Neither the fact that the collector saw fit to make him a defendant in the tax suit, nor the fact that he placed upon the record the prior worthless deeds, can have the effect to resolve the last purchase into a simple payment of the taxes.    The judgment is therefore affirmed.    All concur.