### THOMPSON v. AUDITOR GENERAL.

1. STATES—RIGHT TO SUE STATE.
   State may not be compelled to respond in any court unless it has conferred such privilege on suitors.

2. COURTS—MANDAMUS AGAINST STATE OFFICER PROPERLY BROUGHT IN SUPREME COURT.
   Mandamus against auditor general to compel performance of contract for publication of description of lands to be sold for delinquent taxes in Ingham county was properly brought in Supreme Court rather than in circuit court for Ingham county (3 Comp. Laws 1929, § 15186).

As to necessity of publishing list of lands delinquent for nonpayment of taxes and effect of failure to publish list, see annotation in 81 A. L. R. 1246.

3. Contracts—Definition.

Contract is agreement upon sufficient consideration to do or not to do particular thing.

4. Same—Contract to Publish Notice of Tax Sales.

Where auditor general's designation of plaintiff's newspaper to publish notice of tax sales for certain years in certain county was accepted by plaintiff, valid contract resulted, with obligation to pay reasonable value thereof, under statute providing maximum prices (1 Comp. Laws 1929, §§ 3455, 3457–3459).

5. Same—Breach of Contract.

Refusal to perform valid contract amounts to breach of contract, and action may lie to enforce it.

6. Same—Impairment of Obligation.

Mere violation of contract does not impair its obligation.

7. Statutes—Constitutional Law—Breach of Contract Not Impairment of Obligation.

Ordinance or statute which attempts to impair obligation of contract presents Federal question, but mere breach of contract raises no Federal question, though it may give rise to action for damages.

8. Same—Obligation of Contract Explained.

Obligation of contract, in constitutional sense, is means provided by law by which it may be enforced, and whatever legislation lessens efficiency of these means impairs obligation (U. S. Const., art. 1, § 10; Mich. Const., art. 2, § 9).

9. Constitutional Law—Impairment of Obligation of Contracts.

Constitutional prohibition of impairment of obligation embraces all contracts, executed or executory, and whether between individuals or State and others (U. S. Const., art. 1, § 10; Mich. Const., art. 2, § 9).

10. Same—Existing Remedy to Enforce Contract May Not be Destroyed.

Existing remedy to enforce contract is part of its obligation which may not be destroyed without constitutional violation.

11. Same—Impairment of Obligation.

Any legislation which renders remedy of note holders less effective, less convenient, or which changes their remedy or takes it away, impairs obligation of their contract, unless remedy substantially as efficacious remains, and least degree of impairment is as much prohibited as greatest.

12. SAME—PLEDGING PROCEEDS OF TAX SALES—POSTPONING SALE—
STATUTES.

Where, under law in force at time notes were issued and sold by
municipalities, proceeds of sale of delinquent tax lands were to
constitute sinking fund to retire such outstanding notes, to
payment of which such proceeds were pledged, subsequent
statute postponing sale of such delinquent tax lands until after
time to which such obligations could be legally continued
changes contract of note holders and impairs obligation of
their contract within meaning of Constitution (Act No. 26,
Pub. Acts 1931; Act No. 2, Pub. Acts 1933; U. S. Const.,
art. 1, § 10; Mich. Const., art. 2, § 9).

13. TAXATION—ATTRIBUTE OF SOVEREIGNTY.

Power of taxation is necessary in every government, and is at-
tribute of sovereignty.

14. SAME—POWER OF LEGISLATURE OVER TAXATION.

Within constitutional limits, legislature has full control over sub-
ject of taxation.

15. SAME—CONSTITUTIONAL LAW—COURTS.

Supreme Court has no right to interfere with exercise by legisla-
ture of its power over taxation so long as it acts within limits
of its constitutional authority.

16. SAME—PROCEEDINGS STATUTORY—STATUTES STRICTLY CONSTRUED.

Tax proceedings being purely statutory, provisions of statute in
pursuance of which sales of land for delinquent taxes are made
must, to uphold deprivation of owner of his property, be
strictly construed and rigidly followed.

17. SAME—PUBLICATION NECESSARY PREREQUISITE—JURISDICTION—
FORECLOSURE OF TAX LIEN—STATUTES.

Where statute provides for publication of delinquent lands, such
publication is essential prerequisite to right of court, in suit
brought by auditor general to foreclose tax lien of State, to its
jurisdiction and right to make order directing such sale.

18. CONSTITUTIONAL LAW—DUE PROCESS—STATUTES.

Due process of law is essential prerequisite of any statute by
operation of which one may be deprived of his property.

19. SAME—STATUTE PRESUMED CONSTITUTIONAL.

Every presumption is in favor of constitutionality of act regu-
larly passed, and statutes should be declared unconstitutional
only when they are clearly inconsistent with provisions of
Constitution.

20. SAME—DUE PROCESS DEFINED.

Due process of law required by Constitution means that notice or summons by which party is tendered his day in court, with right to frame issue and be heard before judgment can be rendered or execution issued which shall take away his liberty or property.

21. SAME—JUDICIAL POWER VESTED IN COURTS.

Judicial power of State is vested by people through Constitution in Supreme Court, circuit courts, probate courts, justices of peace, and such other courts of civil and criminal jurisdiction as may be established by legislature in pursuance of Constitution.

22. TAXATION—FORECLOSURE OF TAX LIEN—JUDICIAL POWER—CONSTITUTIONAL LAW.

When auditor general files petition, in nature of bill in chancery, in circuit court, to foreclose lien of State on lands delinquent for taxes, he makes application to court to exercise judicial power, which may be lawfully exercised only in accordance with Constitution, which prescribes procedural rule of due process of law.

23. SAME—DUE PROCESS—DUTY OF AUDITOR GENERAL.

Under law of this State, it is duty of auditor general to resort to court of chancery to obtain decree for sale of lands for delinquent taxes, and no valid decree may be entered by any court except in accordance with due process of law.

24. SAME—PROCEEDING IN REM—NOTICE OF TAX SALE.

Foreclosure by State of its lien on lands for delinquent taxes is proceeding *in rem,* against land itself, and valid notice describing with reasonable certainty lands to be sold must be given before sale.

25. SAME—CONSTITUTIONAL LAW—DUE PROCESS—FAILURE TO DESCRIBE LANDS SOLD—STATUTES.

Statute providing for sale of lands for delinquent taxes which fails to provide for description of particular lands to be sold is repugnant to Constitution, because it may deprive owner of his property without due process of law.

CLARK and SHARPE, JJ., dissenting in part.

Mandamus by Theodore A. Thompson to compel John K. Stack, Jr., Auditor General, to furnish for

publication descriptions of real estate delinquent for taxes. Submitted February 10, 1933. (Calendar No. 37,109.) Writ granted March 1, 1933.*

*E. R. Boyles* and *George G. Hunter,* for plaintiff.

*Patrick H. O'Brien,* Attorney General, *Walter A. Kirkby,* Assistant Attorney General, and *Prentiss M. Brown,* Special Assistant Attorney General, for defendant.

POTTER, J. Plaintiff seeks mandamus against the auditor general to compel him to furnish for publication the descriptions of real estate delinquent for taxes, to be sold in Ingham county in 1933.

1. It is objected that in effect this is a suit against the State, and may not be maintained.

"No doctrine is better settled than that the State cannot be compelled to respond in any court unless it has conferred such a privilege on suitors." *Auditor General* v. *Tuscola County Treasurer,* 73 Mich. 28.

It was settled in *Chisholm* v. *Georgia,* 2 Dall. (2 U. S.) 419, that a State might, under the judiciary act of 1789, be sued by the citizens of another State. Mr. Justice Iredell dissented from that holding. His views were later embodied in the 11th amendment to the Constitution of the United States, which was soon after adopted. The history of this controversy is discussed in *Hans* v. *Louisiana,* 134 U. S. 1 (10 Sup. Ct. 504).

(a) Actions or suits against individuals who are officers of the State, to recover property, compel the performance of a duty and prevent a wrongful deprivation of rights are not suits against the State, within the meaning of the 11th amendment to the

---

* Under subsequent order of court, writ of mandamus was not issued, in view of existing emergency, and it being discretionary writ.—REPORTER.

Constitution of the United States. *United States* v. *Lee,* 106 U. S. 196 (1 Sup. Ct. 240) ; *United States* v. *Peters,* 5 Cranch (9 U. S.), 115; *Meigs* v. *McClung,* 9 Cranch (13 U. S.), 11; *Poindexter* v. *Greenhow,* 114 U. S. 270, 330 (5 Sup. Ct. 903, 962) ; *Ex parte Young,* 209 U. S. 123 (28 Sup. Ct. 441, 13 L. R. A. [N. S.] 932, 14 Ann. Cas. 764) ; *Hopkins* v. *Clemson Agricultural College,* 221 U. S. 636 (31 Sup. Ct. 654, 35 L. R. A. [N. S.] 243).

(b) ''The objections to proceeding against State officers by mandamus or injunction are: first, that it is, in effect, proceeding against the State itself; and, secondly, that it interferes with the official discretion vested in the officers. It is conceded that neither of these things can be done. A State, without its consent, cannot be sued by an individual; and a court cannot substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter. But it has been well settled, that, when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it. * * * In either case, if the officer plead the authority of an unconstitutional law for the nonperformance or violation of his duty, it will not prevent the issuing of the writ.'' *Board of Liquidation* v. *McComb,* 92 U. S. 531.

See, also, *Pennoyer* v. *McConnaughy,* 140 U. S. 1 (11 Sup. Ct. 699).

If cases of mandamus and injunction may be brought in the Federal courts in the cases and under

the circumstances indicated, in the face of the eleventh amendment to the Constitution of the United States, there can be no reason why as liberal a rule ought not to prevail in the courts of the State.

2.   It is contended this suit, if maintainable at all, is ·one maintainable only in the circuit court of Ingham county in chancery, and this court has no original jurisdiction in the premises. If plaintiff has a contract with the State for the publication of the description of the lands to be sold in 1933 for delinquent taxes in Ingham county, and it is the statutory duty of defendant to furnish such descriptions of delinquent lands to him for publication, then plaintiff may be entitled to mandamus to compel the delivery of such statements of delinquent tax lands; but he is expressly prohibited by statute from going into the circuit court for mandamus.

"No circuit court shall have jurisdiction to issue a writ of mandamus against any State officer."   3 Comp. Laws 1929, § 15186.

By section 4 of article 7 of the Constitution, the Supreme Court has power to issue writs of mandamus and to hear and determine the same. This case is properly brought in this· court, and could not be brought and maintained in the circuit court for Ingham county.

3.   It is claimed plaintiff has no contract with the auditor general and consequently no standing in court.

"The auditor general shall prepare and file in the office of the county clerk in each county in which lands are to be sold under the provisions of this act, a petition addressed to the circuit court for said county in chancery, stating therein by apt reference to lists or schedules annexed thereto a description of all lands in such county upon which taxes have re-

mained unpaid. * * * Such petition shall pray a decree in favor of the State of Michigan against said land for the payment of the several amounts so specified therein, and in default thereof that such lands be sold. It shall be signed by the auditor general and need not be otherwise verified, and shall be deemed equivalent to a bill in chancery to enforce the lien for such taxes, interest and charges, averring their validity, that they have not been paid, and praying for a sale to pay such lien. * * * The petition shall be in a substantial record book, with the lists of lands and taxes annexed following the same therein. * * * The word 'petition' shall be construed to include the lists annexed thereto." 1 Comp. Laws 1929, § 3452.

"As soon as the auditor general's petition, with a list of delinquent tax lands is filed with the register in chancery under the provisions of section sixty-one of this act" it is the duty of the county treasurer to notify the owners of each piece or parcel of land subject to sale of such impending sale. 1 Comp. Laws 1929, § 3453.

The form of the order of publication to be entered by the circuit judge upon the filing of the petition of the auditor general for the sale of lands for delinquent taxes is prescribed by statute, and recites the petition, "praying for a decree in favor of the State of Michigan, against each parcel of land therein described." 1 Comp. Laws 1929, § 3454.

"The newspapers in which such order and petition are to be published shall be designated by the auditor general on or before the first day of September in each and every year, and not afterwards," etc. 1 Comp. Laws 1929, § 3455.

"The auditor general shall cause a copy of said order and a copy of said petition to be published at

least once in each week for four successive weeks next prior to the time fixed for the hearing thereof, in some newspaper published and circulating in the county where such petition is filed, to be selected by the auditor general." 1 Comp. Laws 1929, § 3458.

Other parts of the tax statutes provide for a judicial hearing and for a final decree for the sale of each parcel of land described in the petition found to be subject to sale. 1 Comp. Laws 1929, § 3459.

It is plaintiff's claim his newspaper was designated by the auditor general as the one in which such petition and order, together with the description of the lands to be sold for delinquent taxes, was to be published in Ingham county in 1933 and that such designation and his acceptance thereof constitutes a contract with the auditor general. It is contended plaintiff has no contract. A contract has been defined as an agreement upon a sufficient consideration to do or not to do a particular thing. It has been otherwise defined. 13 C. J. p. 237. The auditor general designated plaintiff's newspaper as the one to publish the notice of tax sales in 1933 in Ingham county. Plaintiff accepted this designation and is ready, able and willing to publish the petition and order, together with the lists of lands to be offered for sale as required by law. It is claimed plaintiff has no contract because no price for the printing was set.

3 Comp. Laws 1929, § 15474, provides:

"For publishing any legal notice or any order, citation, summons, or any other proceedings or advertisement required by law to be published in any newspaper, the cost of publishing such advertisement shall not exceed the rate of one dollar and twenty cents per folio for the first insertion and

sixty cents per folio for each subsequent insertion: *Provided,* That any newspaper publishing for the State of Michigan any such advertisement other than tax lists and those arising in the course of judicial proceedings shall be permitted to charge therefor its regular established commercial rate in effect at the time such notice or advertisement is published.''

This statute fixes specific charges in some cases and permits charging the regularly established commercial rates in other cases; but 1 Comp. Laws 1929, § 3457, as amended by Act No. 19, Pub. Acts 1932, provides:

''The cost of such advertising shall in no case exceed the sum of forty cents for each description of lands so advertised and sold: *Provided,* That in case there are less than four hundred descriptions so advertised in any county, there shall be paid the further sum of one dollar and twenty cents per folio for the first insertion and sixty cents per folio for each subsequent insertion of the auditor general's petition and order of hearing, but such sum shall not exceed the amount to be paid for advertising four hundred descriptions at the rate of forty cents each, and shall be paid by the State treasurer upon warrant of the auditor general out of the general fund of the State: *Provided further,* That where there are fifteen thousand or more but less than thirty thousand descriptions of land to be advertised and sold in any single county the cost of such advertising shall in no case exceed the sum of thirty-five cents for each description, and where there are thirty thousand or more but less than fifty thousand descriptions such cost shall in no case exceed the sum of thirty cents for each description, and where there are fifty thousand or more descriptions such cost shall in no case exceed the sum of twenty-five cents for each description.''

We think this statute fixing the maximum prices plaintiff may charge, in the absence of any special agreement between the auditor general and plaintiff, sufficiently definite. The contract contemplates performance by plaintiff and implies an obligation to pay the reasonable value thereof. 13 C. J. pp. 240–244.

4. There is a distinction between a breach of contract and a law impairing the obligation of a contract.

If a valid contract is made and entered into and one party thereto refuses to perform it, such refusal amounts to a breach of contract. An action may lie to enforce it. Its validity is not impaired. But, if the legislature pass a law providing land contracts should not be enforced, that would be a law impairing the obligation of the contract and would fall within the constitutional prohibition against legislation impairing the obligation of contracts (U. S. Const., art. 1, § 10; Mich. Const., art. 2, § 9).

A mere violation of a contract does not impair its obligation. *St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 142 (21 Sup. Ct. 575); *McCormick* v. *Oklahoma City,* 236 U. S. 657 (35 Sup. Ct. 455).

"The breach of a contract is neither a confiscation of property, nor a taking of property without due process of law." *Shawnee Sewerage & Drainage Co.* v. *Stearns,* 220 U. S. 462 (31 Sup. Ct. 452).

It may give rise to an action for damages resulting from breach of contract (12 C. J. p. 1011), if there is a valid contract between the parties.

"It is part of the duty of the Federal courts, under the impairment of the obligation of contract clause in the Constitution, to decide whether there be a valid contract and what its construction is, and

whether, as construed, there is any subsequent legislation, by municipality or by the State legislature, which impairs its obligation." *Mercantile Trust & Deposit Co.* v. *City of Columbus,* 203 U. S. 311 (27 Sup. Ct. 83).

See, also, *Knoxville Water Co.* v. *Knoxville,* 200 U. S. 22 (26 Sup. Ct. 224).

An ordinance or statute which attempts to impair the obligation of a contract presents a Federal question (*Pierce* v. *Railway,* 171 U. S. 641 [19 Sup. Ct. 64]; 1 Cooley, Constitutional Limitations [8th Ed.], p. 46; 12 C. J. p. 1011); while a mere breach of contract raises no Federal question, though it may give rise to an action for damages. 12 C. J. p. 1011.

"There can be no doubt of the power of the State legislature to refuse to perform even a contract, and, where it forbids the application of money in the State treasury to any particular use, no court can interfere. The State is not liable to suit except as it authorizes a suit, and this authority can be revoked at pleasure. This is such elementary doctrine that it only needs statement." *Sanilac Supervisors* v. *Auditor General,* 68 Mich. 659, 665.

5. What is the obligation of a contract?

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced,—by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened." *Louisiana* v. *New Orleans,* 102 U. S. 203.

See, also, *Louisiana, ex rel. Hubert,* v. *City of New Orleans,* 215 U. S. 170 (30 Sup. Ct. 40).

"It cannot be denied that, as a general rule, laws applicable to the case which are in force at the time and place of making a contract enter into and form part of the contract itself, and 'that this embraces alike those laws which affect its validity, construction, discharge, and enforcement.' *Walker* v. *Whitehead,* 16 Wall. (83 U. S.) 314, 317. But it is equally well settled that changes in the forms of action and modes of proceeding do not amount to an impairment of the obligations of a contract, if an adequate and efficacious remedy is left." *Antoni* v. *Greenhow,* 107 U. S. 769 (2 Sup. Ct. 91).

The constitutional prohibition embraces all contracts executed or executory whether between individuals or the State and others. *Green* v. *Biddle,* 8 Wheat. (21 U. S.) 1.

The existing remedy to enforce a contract is a part of its obligation which cannot be destroyed without constitutional violation. *White* v. *Hart,* 13 Wall. (80 U. S.) 646; *Gunn* v. *Barry,* 15 Wall. (82 U. S.) 610; *Memphis* v. *United States,* 97 U. S. 293; *Rees* v. *City of Watertown,* 19 Wall. (86 U. S.) 107.

"Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract; and it does not impair it, provided it leaves a substantial remedy, according to the course of justice as it existed at the time the contract was made." 1 Cooley, Constitutional Limitations (8th Ed.), pp. 585, 586.

"It has accordingly been held that laws changing remedies for the enforcement of legal contracts, or abolishing one remedy where two or more existed, may be perfectly valid, even though the new or remaining remedy be less convenient than that which was abolished, or less prompt and speedy." 1 Cooley, Constitutional Limitations (8th Ed.), p. 587.

Defendant relies upon Act No. 2, Pub. Acts 1933, which is to be considered by the court. It provides:

"SECTION 1. The publication of the order and petition for the sale of lands delinquent for taxes for nineteen hundred thirty and prior years and of the description of such lands shall be prohibited from and after the taking effect of this act, so as to prohibit the sale of such lands for delinquent taxes for nineteen hundred thirty and prior years on the first Tuesday in May, nineteen hundred thirty-three.

"SEC. 2. Any city or village acting under a charter having provisions therein regulating sales of its delinquent taxes is hereby authorized and empowered to prohibit the publication of the · descriptions and/or order and petition and sale of lands delinquent for taxes, with like effect and under like conditions as hereinbefore set forth, action in regard thereto to be by resolution of the legislative body of such city or village.

"This act is ordered to take immediate effect."

It is claimed by plaintiff this statute is void because it impairs the obligation of contract, in violation of the Constitution of the United States and the Constitution of this State.

At least as early as Edward I, whose motto was *pacta sunt servanda* (Plucknett, History of the Common Law, p. 40), the inviolability of contracts has been a subject of interest. Rufus King, in the constitutional convention of 1787 suggested the prohibition against States impairing the obligation of contracts. He was an able lawyer, familiar with Coke and Blackstone as well as the conditions which prevailed and had prevailed in the several States under the Articles of Confederation, portrayed by Mr. Justice Swayne in *Edwards* v. *Kearzey*, 96 U. S. 595; when the people of the several States divided into political parties, one favoring the repudiation

of contracts and the other desiring to uphold their validity. 5 Marshall's Life of Washington, p. 85.

State action took many forms: The emission of vast quantities of paper money, decreed to be legal tender for the payment of debts (Lee, 3 Elliott's Debates [2d Ed.] p. 179; Davie, 4 Elliott's Debates [2d Ed.], pp. 157–159); the payment of the soldiers of the Revolution by granting them worthless pine barrens (Davie, 4 Elliott's Debates [2d Ed.], pp. 157–159; Pinckney, 4 Elliott's Debates [2d Ed.], p. 333; Thacher, 2 Elliott's Debates [2d Ed.], pp. 142, 144); delay in legal proceedings and stopping the courts of justice by mobs (Thacher, 2 Elliott's Debates [2d Ed.], p. 144); and by suspension of the collection of taxes (5 Marshall's Life of Washington, p. 86). These and other acts destroying public credit impaired confidence between man and man, broke down the morale of the people and insured the ruin of all. 2 Ramsey, History of South Carolina, 429. Public credit was gone, commerce languished, produce fell in value, and justice was trampled under foot (Randolph, 3 Elliott's Debates [2d Ed.], pp. 65–86; Davie, 4 Elliott's Debates [2d Ed.], p. 157; Federalist, 15). American obligations became a proverbial expression of perfidy, as did Punic faith among the Romans. Thacher, 2 Elliott's Debates (2d Ed.), pp. 143, 144. The government of the United States, under the Articles of Confederation, had no taxing power. It was sustained by the payment of requisitions made by the Continental Congress upon the States. These requisitions, disregarded in many instances, became but pompous petitions for public charity. Livingston, 2 Elliott's Debates (2d Ed.), p. 342. We had neither troops, treasure, nor government (Federalist 15); being without a ship, a soldier, or a shilling. Rutledge, 4 Elliott's Debates (2d Ed.), p. 274.

Plaintiff claims Act No. 2, Pub. Acts 1933, impairs the obligation of contracts, in that municipalities in this State have borrowed many millions of dollars in pursuance of Act No. 26, Pub. Acts 1931.

Subdivision 3 of § 1, Act No. 26, Pub. Acts 1931, provides:

"Any such governmental unit may borrow money in anticipation of the collection of delinquent taxes for any preceding fiscal year. No such loan against the delinquent taxes of any such preceding fiscal year shall exceed sixty per cent. of such taxes: *Provided,* that no such loan shall be made against the delinquent taxes of any year unless such delinquency exceeds five per cent. of the total taxes levied for such year. The notes evidencing such loan shall be payable not later than the estimated time or times of actual collection of such taxes but in no case later than the expiration of the period of redemption following the sale of lands for the nonpayment of the taxes for such fiscal year. Such delinquent taxes when collected, including the proceeds of sales for the nonpayment of such taxes and proceeds of redemption from such tax sales, shall be placed in a sinking fund for the payment of such notes and if the amount in such sinking fund shall be insufficient to pay the principal and interest of such notes in full when due, the amount necessary for such payment shall be advanced out of the general funds and provision shall be made on the next general tax roll for raising the amount so advanced. No more than one loan shall be made against the delinquent taxes of any one preceding fiscal year unless a subsequent loan is authorized in the resolution authorizing such first loan."

Section 5 of Act No. 26, Pub. Acts 1931, provides:

"No notes shall be issued under the provisions of subdivision three of section one of this act after

October one, nineteen hundred thirty-three, except renewals of such notes theretofore issued. The term of such renewal notes shall in no case exceed the maximum term permitted by said subdivision."

These provisions of the statute authorized governmental units to borrow money and pledge the proceeds to be derived from delinquent taxes for its payment. The moneys borrowed could be used only for the payment of debts and necessary maintenance expenses. Such obligations could not be continued "later than the expiration of the period of redemption following the sale of lands for the nonpayment of taxes for such fiscal year."

This law entered into and formed a part of the contract of the holders of notes issued in pursuance of the statute. Any legislation which renders the remedy of the note holder less effective, or less convenient or which changes their remedy or takes it away, impairs the obligation of their contract, unless a remedy substantially as efficacious remains. It is not a question of the degree of impairment; the least is as much prohibited as the greatest. Where, under the law in force at the time notes were issued and sold, the proceeds of the sale of delinquent tax lands were to constitute a sinking fund to retire such outstanding notes to the payment of which such proceeds were pledged, a subsequent statute postponing the sale of such delinquent tax lands until after the time to which such obligations could be legally continued changes the contract of the note holders, and impairs the obligation of their contract within the meaning of the Constitution.

One important excuse of the American colonists in rebelling against the government of Great Britain was taxation without representation in the English parliament, to establish which principle in

England the judgment of the English court upholding the right of the king to impose taxes upon his subjects by virtue of his prerogative, was overturned, the judges impeached and driven from power, Archbishops Strafford and Laud, spiritual advisors of the king executed, and Charles I brought to the block. Since that time, in England and in America, the principle that there shall be no taxation without representation in the legislative body which imposes the tax has been firmly established. 37 Cyc. p. 715. It lies at the basis of the doctrine of representative government and is fixed in the Constitution of the United States, and the Constitution of this State.

"The power to impose taxes is vested exclusively in the legislative department of government, and cannot be exercised except in pursuance of its authority; neither the courts nor the executive possess any powers of taxation, this being solely the function of the legislature. And further, subject to the general and constitutional limitations of State power in this respect, the legislature alone has the right and the discretion to determine the time, amount, nature, and purposes of the taxes to be levied, and the means of enforcing their payment." 37 Cyc. 724.

See, also, *Attorney General* v. *Sanilac Supervisors,* 71 Mich. 16.

Taxes are not contractual obligations of the taxpayer to the State. Taxation is a method of raising revenue to support the government. The power to tax, subject to constitutional restrictions and limitations,—

"is not, and from its very nature cannot, be controlled and limited by precise and accurate rules, which shall designate and define in all cases the par-

ticular purposes for which alone moneys shall be raised, or to which they may be appropriated when raised, or the extent of the burden which may be imposed, and it is added that upon all these points a broad and uncontrollable discretion is necessarily vested in the legislative department of every government." *People, ex rel. D. & H. R. Co., v. Township of Salem,* 20 Mich. 452 (4 Am. Rep. 400).

The power of taxation is necessary in every government. *Sears* v. *Cottrell,* 5 Mich. 251. It is an attribute of sovereignty. Government deprived of the power to accomplish the ends of its creation would be a nullity. *Charles River Bridge* v. *Warren Bridge,* 11 Peters (36 U. S.), 419. The power of taxation is regarded as fundamental to the very existence of the government of the States. *State Board of Tax Com'rs of Indiana* v. *Jackson,* 283 U. S. 527 (51 Sup. Ct. 540, 73 A. L. R. 1464). The power of the legislature of this State is as omnipotent as that of the parliament of England, save only as restrained by the Constitution of the United States and the Constitution of this State. *Sears* v. *Cottrell, supra; Harsha* v. *City of Detroit, ante,* 586; 1 Cooley, Constitutional Limitations (8th Ed.), p. 354. The power of taxation is vested in the legislature. Within constitutional limits the legislature has full control over the subject. *Attorney General* v. *Sanilac Supervisors, supra.*

"The validity of a contract made by a municipal corporation necessarily involves the right to raise by taxation the amount which it has agreed to pay. 'The right to contract must be limited to the right to tax, and if, in the given case, no tax can be lawfully levied to pay the debt, the contract is void for want of authority to make it.' " *Hammond* v. *Place,* 116 Mich. 628 (72 Am. St. Rep. 543), citing *Citizens,*

*etc., Loan Ass'n* v. *City of Topeka,* 20 Wall. (87 U. S.) 655.

The bonded indebtedness of the city of North Muskegon is stated in *Hammond* v. *Place, supra,* to have been $35,000 when the total assessed valuation was but $33,000. So that, "the power to tax involves the power to destroy." *McCullough* v. *Maryland,* 4 Wheat. (17 U. S.) 316, 431.

What are the constitutional limitations and restrictions on the power of taxation of the legislature in this State?

(1) The legislature shall provide by law for an annual tax sufficient with other resources to pay the estimated expenses of the State government, the interest on any State debt and such deficiency as may occur in the resources. Constitution 1908, art. 10, § 2.

(2) By amendment to article 10, "the total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property," etc. (section 21, added at November election, 1932).

(3) "The legislature shall provide by law a uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law." Constitution 1908, art. 10, § 3.

(4) "Every law which imposes, continues or revives a tax shall distinctly state the tax, and the objects to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object." Constitution 1908, art. 10, § 6.

(5) "The power of taxation shall never be surrendered or suspended by any grant or contract to which the State or any municipal corporation shall be a party." Constitution 1908, art. 10, § 9.

(6) "The State may contract debts to meet deficits in revenue, but such debts shall not in the aggregate at any time, exceed two hundred fifty thousand dollars." Constitution 1908, art. 10, § 10.

This court has no right to interfere with the exercise by the legislature of power delegated to it by the Constitution. So long as it acts within the limits of its constitutional authority the propriety of its acts are political questions, with which this court has nothing to do.

(a) The Constitution "enjoins a just principle of equality in regard to all public burdens, and prescribes as a limit to the exercise of the taxing power that common burdens should be sustained by common contributions, regulated by some fixed general rule, and apportioned according to some uniform ratio of equality." *Williams* v. *Mayor of Detroit,* 2 Mich. 560.

See, also, *Sears* v. *Cottrell, supra; Motz* v. *City of Detroit,* 18 Mich. 495; *Attorney General, ex rel. Barnes,* v. *Midland County Sup'rs,* 178 Mich. 513.

"The Constitution makes it the duty of the legislature 'to provide a uniform rule of taxation, except on property paying a specific tax,' etc. And this uniform rule of taxation is to operate on property assessed at its cash value. But the Constitution has never been understood as requiring the rule to be so framed as to make each piece of property of the same value throughout the State, pay the same amount of tax. * * * The taxable property of the whole State is taxed to pay State expenses and that in the counties only to pay county expenses, and in the townships to pay township expenses." *Woodbridge* v. *City of Detroit,* 8 Mich. 274, 285.

(b) "The question is whether the legislature can remit a tax regularly levied in pursuance of law. It cannot do indirectly what it has not power to do

directly. It cannot, as we have stated, impose a tax of one mill on a part of the State and of two mills on the rest of the State. Can it effect the same object, by levying two mills on the whole State and then remitting one mill in one or more counties? It seems to me the remission of the tax in such a case would be unconstitutional, as it would impose on the rest of the State more than its proportion of the expenses of government, which the Constitution most clearly intended to prohibit. The principle is the same when applied to individuals." *People, ex rel. St. Mary's Falls Ship Canal Co.,* v. *Auditor General,* 7 Mich. 84, 97.

(c) The important question is whether the list of lands delinquent for taxes must be published, together with the descriptions of such lands. There is no question but that tax proceedings are purely statutory; that no one may be deprived of his property without due process of law; that the statutory provisions in pursuance to which sales of land for delinquent taxes are made must, to uphold the deprivation of the owner of his property, be strictly construed and rigidly followed, and when the statute provides for the publication of the lists of delinquent lands, such publication is an essential prerequisite to the right of the court in a suit brought by the auditor general to foreclose the tax lien of the State, to its jurisdiction and right to make an order directing such sale.

May the State enact a statute which will confer upon the auditor general or other State agency the power to foreclose the tax lien of the State and sell the lands of the delinquent taxpayer without publication of a list of the lands upon which the State claims a lien, together with a description thereof?

In every State in the Union, notice of sale of lands for delinquent taxes must be given, and such notice must describe the lands to be sold. The reasons

underlying these several statutory provisions obtaining in some form or other throughout the United States are, the necessity of identifying the particular parcels of land with reasonable certainty in order that the owner may know his lands are offered for sale and the intending purchasers may know what lands are offered for sale.

These requirements have been deemed fundamental to the protection of the liberty and property of the citizen and inherent in that due process of law guaranteed by both the State and the Federal Constitutions. It is suggested that though these things have hitherto been regarded as fundamental in all the States, it has been because the legislature has, in the exercise of its power to control the subject of taxation, deemed them essential to the protection of the liberty and property of the citizen and provided for them by statute. We are confronted with the question whether the publication of the descriptions of the lands to be sold for delinquent taxes may be dispensed with, or prohibited by the legislature; whether the court may make a valid order of sale—foreclose the lien of the State upon lands delinquent for taxes—without notice by publication of the descriptions of the lands to be sold, and whether such legislation may be upheld as an authorized and valid exercise of the legislative power of the State, in face of the constitutional provision of this State which provides no person shall be deprived of life, liberty, or property without due process of law. Article 2, § 16.

Due process of law is an essential prerequisite of any statute by the operation of which one may be deprived of his property. In passing upon the constitutionality of the statute enacted by the legislature, certain fundamental rules must be considered and given due weight. The legislative power is pre-

sumed to have acted reasonably and to have exercised such powers as are conferred upon it within constitutional limits, and a coördinate department of government should exercise its power to annul legislation with caution and circumspection. Every presumption is in favor of the constitutionality of an act regularly passed, and statutes should be declared unconstitutional only when they are clearly inconsistent with the provisions of the Constitution. It is only when constitutional provisions and statutory provisions conflict so that one or the other cannot stand, that the acts of the legislature, made up of agents of the people, must give way to the acts of the people themselves, as expressed in the Constitution.

What is due process of law?

"The due process of law required by the Constitution means that notice or summons by which a party is tendered his day in court, with the right to frame an issue and be heard before a judgment can be rendered or execution issued which shall take away his liberty or property." *Rouse, Hazard & Co.* v. *Wayne Circuit Judge,* 104 Mich. 234 (27 L. R. A. 577, 53 Am. St. Rep. 457).

The essentials of due process of law in condemnation cases were considered in *Hendershott* v. *Rogers,* 237 Mich. 338, and in *Re Petition of Macomb County Road Commissioners,* 238 Mich. 29, where it was held that before a man could be deprived of his property, he was entitled to notice, hearing and opportunity to defend upon the question of the necessity for the taking. In *Weimer* v. *Bunbury,* 30 Mich. 201, the court considered the subject of due process of law in relation to the exercise by the State of its power of taxation. It was said:

"If any court has ever decided that judicial proceedings are of constitutional necessity in appro-

priating property under the power of taxation, the case has not been brought to our attention, and has been overlooked in our investigations. This would be most extraordinary if the necessity existed, for tax systems similar to our own have prevailed ever since our government was founded, and it cannot be said that tax laws are usually so popular as to disarm every person of any legal objections which he might suppose available to relieve him of their burdens. On the contrary, no laws are contested more vigorously, and with none are people more critical in looking after defects and infirmities. It may be safely asserted, without fear of contradiction, that if the collection of the revenue could only be made through legal proceedings, the true principle would not have been left to so late a discovery, but the wheels of government would long ago have been blocked by litigious parties until an entirely new system could be substituted. And it need hardly be said that any new system in which courts should be made the administrators of the revenue would necessarily be so cumbrous, and so subject to impediments and delays, as to make a constitutional provision requiring it a great public inconvenience."

Under the law of this State a tax collector may seize and sell personal property to realize taxes assessed for which the owner of the property is liable. 1 Comp. Laws 1929, § 3438.

"A tax assessment is in the nature of a judgment." *Moss* v. *Cummings,* 44 Mich. 359.

"The general policy of the State is to favor the summary collection of taxes, and the laws have always provided for summary process, which is usually as effectual as any other, and much more speedy." *Township of Laketon* v. *Akeley,* 74 Mich. 695.

"The due process clause in the Fourteenth Amendment does not take up the statutes of the

several States and make them the test of what it requires; nor does it enable this court to revise the decisions of the State court on questions of State law. What it does require is that State action whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as 'law of the land.' Those principles are applicable alike to all the States and do not depend upon or vary with local legislation." *Hebert* v. *Louisiana,* 272 U. S. 312 (47 Sup. Ct. 103, 48 A. L. R. 1102).

"It was not the intention of the Fourteenth Amendment to subvert the systems of the States pertaining to general and special taxation; that that amendment legitimately operates to extend to the citizens and residents of the States the same protection against arbitrary State legislation, affecting life, liberty and property as is afforded by the Fifth Amendment against similar legislation by congress." *Cass Farm Co.* v. *Detroit,* 181 U. S. 396 (21 Sup. Ct. 644).

See, also, *Detroit* v. *Parker,* 181 U. S. 399 (21 Sup. Ct. 624).

Taxes on real estate are by statute made a lien upon the real estate against which they are assessed, after December 1st of the year of their assessment, which lien continues until the taxes are paid. 1 Comp. Laws 1929, § 3429.

If real estate taxes cannot be collected by the township treasurer, who, for the purpose of collecting them is the agent of the State, county, township, and school district, he returns such delinquent taxes to the county treasurer (1 Comp. Laws 1929, § 3446); and receives credit for them on his settlement with such county treasurer (1 Comp. Laws 1929, § 3447). It is the duty of the county treasurer

to transmit, "A statement of unpaid taxes, together with a list of lands on which the same are delinquent," certified by him to the auditor general. 1 Comp. Laws 1929, § 3448. Other statutes make it the duty of the auditor general to sell the lands remaining delinquent for taxes, and 1 Comp. Laws 1929, § 3451, provides:

"In the disposition and sale of such delinquent tax lands the people of the State of Michigan shall be deemed to have a valid lien upon such lands, with all the rights to enforce the same as a preferred or first claim upon such lands, and the rights and choses to enforce such lien shall be held and construed by all the courts of this State as the *prima facie* rights of the State, and shall not be set aside or annulled except in the manner and for the causes herein specified."

Subsequent provisions of the statute hitherto quoted provide for the foreclosure of the lien of the State and a sale of the land for such delinquent taxes.

The judicial power of the State is vested by the people through the Constitution in the Supreme Court, circuit courts, probate courts, justice of the peace and such other courts of civil and criminal jurisdiction as may be established by the legislature in pursuance of the Constitution. Constitution 1908, art. 7, § 1. Article 4 of the Constitution provides for the perpetuation of a tripartite division of governmental powers, and "no person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution." Constitution 1908, art. 4, § 2.

When the auditor general files a petition, in the nature of a bill in chancery, in the circuit court, to

foreclose the lien of the State on lands delinquent for taxes, he makes an application to the court to exercise judicial power. Judicial power may be lawfully exercised only in accordance with the Constitution which prescribes the procedural rule of due process of law.

The State may probably provide for the enforcement of the collection of taxes lawfully assessed without the aid of the court, but it has been deemed by the legislature of the several States to be such an arbitrary exercise of despotic power that in every State in the union statutes provide that before a sale of land for taxes may be made, notice of sale, which shall describe the land to be sold, shall be given either personally or by publication. The reason for this essential rule of State action is that no one may be deprived of his property without due process of law. Under the law of this State it is the duty of the auditor general to resort to a court of chancery and to obtain a decree for the sale of lands for delinquent taxes. No valid decree can be entered by any court except in accordance with due process of law.

"One of these immutable principles (of constitutional law) is that no man shall be condemned in his person or property without due notice and an opportunity of being heard in his defense, wherever such notice and hearing is necessary for his protection. In fact, this may be said to be the fundamental idea of due process of law." 5 Encyclopedia U. S. Sup. Ct. Repts. p. 512.

Lands may be held by both residents and non-residents of the State.

Governor Pingree, in his message of January 4, 1899, to the legislature, recommended, "that personal notice to real estate owners whose taxes are

unpaid be substituted in the place of notice by advertisement in the newspapers." 4 Messages of the Governors of Michigan, p. 144. Act No. 234, Pub. Acts 1905, as amended, provides for service of notice by mail by the county treasurer upon the owner or owners of delinquent tax lands, but it is "provided, that failure to receive or serve such notice shall not invalidate the proceedings taken under the auditor general's petition and decree of the circuit court in foreclosure and sale of the lands for taxes." 1 Comp. Laws 1929, § 3453.

When a State officer, in the exercise of the power delegated to him, petitions for a judicial determination of the right of the State to foreclose its lien and sell the land assessed for delinquent taxes, he does so just as does any other litigant invoking the exercise of the judicial power of the court, and the same principles and rules prevail which govern private citizens seeking judicial remedies, and require service either actual or constructive on all interested litigants. *Leigh* v. *Green,* 193 U. S. 79 (24 Sup. Ct. 390). Under the tax law the State acquires a lien against the real estate assessed and before such land may be sold, such lien must be foreclosed and sale ordered by the court. Such foreclosure is a proceeding *in rem,* against the land itself,—and it is the holding of the courts of this country that valid notice which must describe with reasonable certainty the lands to be sold, must be given before sale, and that any statute which provides for the sale of lands for delinquent taxes which fails to provide for description of the particular lands to be sold is repugnant to the Constitution, because it may deprive the owner of his property without due process of law. In the early case of *Ronkendorff* v. *Taylor's Lessee,* 4 Peters (29 U. S.), 349, decided more than a

century ago, the Supreme Court of the United States said of the notice of sale of lands for delinquent taxes:

"It is not sufficient, that such a description should be given in the advertisement, as would enable the person desirous of purchasing to ascertain the situation of the property by inquiry. Nor, if the purchaser at the sale had been informed of every fact necessary to enable him to fix a value upon the property; yet the sale would be void, unless the same information had been communicated to the public in the notice. Its defects, if any exist in the description of the property to be sold, cannot be cured by any communication made to bidders, on the day of sale, by the auctioneer."

A proceeding *in rem* is a proceeding against the thing. Tax laws seek to make the land answer for public dues.

"When the proceedings are *in personam* the object is to bind the rights of persons, and in such cases, the person must be served with process; in proceedings to reach the thing service upon it and such proclamation by publication as gives opportunity to those interested to be heard upon application is sufficient to enable the court to render judgment. * * * Where land is sought to be sold and is described in the notice a technical service upon it would add nothing to the procedure where the owner is unknown. The publication of notice which describes the land is certainly the equal in publicity of any seizure which can be made of it." *Leigh* v. *Green, supra,* 91.

After reviewing numerous authorities, the court continued:

"The principles applicable which may be deduced from the authorities we think lead to this result: Where the State seeks directly, or by authorization

to others, to sell land for taxes upon proceedings to enforce a lien for the payment thereof, it may proceed directly against the land within the jurisdiction of the court, and a notice which permits all interested, who are 'so minded,' to ascertain that it is to be subjected to sale to answer for taxes, and to appear and be heard, whether to be found within the jurisdiction or not, is due process of law within the Fourteenth Amendment to the Constitution. In the case under consideration the notice was sufficiently clear as to the lands to be sold." *Leigh* v. *Green, supra,* 92.

"Due process of law, must be found in the State statute, and cannot be departed from without violating the Constitution of the United States." *Castillo* v. *McConnico,* 168 U. S. 674 (18 Sup. Ct. 229).

"In a direct proceeding for judgment against lands for taxes, there can be no lien, and consequently no judgment, unless the lands are described so that they can be located and found." *People, ex rel. Arns,* v. *Rickert,* 159 Ill. 496 (42 N. E. 884).

See, also, *Hook* v. *People, ex rel. Begole,* 177 Ill. 632 (52 N. E. 1036).

"Notice to a party whose rights are to be affected by judicial proceedings is an essential element of due process." 12 C. J. p. 1228.

"The legislature may prescribe what notice shall be given, subject to the condition that the notice prescribed must conform to the requirement of due process of law by affording an opportunity to be heard. A method of service, although prescribed by statute, is not sufficient if it does not amount to due process of law." 12 C. J. p. 1230.

"Due process of law is satisfied if the notice given is sufficient to make it reasonably probable that the party proceeded against would be apprised of what is going on and given an opportunity to defend, and

a form of substituted service not adapted to bring home notice to the party to be charged has been held not to be due process.'' 12 C. J. p. 1232.

''The contents of the notice must be such as to apprise the defendant of the nature of the claim against him and of the relief sought, and of the time and place of hearing.'' 12 C. J. pp. 1232, 1233.

''The notice must contain such a description of the land sought to be charged as will suffice to identify it with reasonable ease and certainty.'' 37 Cyc. p. 1306.

''The citation must also be in the form prescribed by the statute, if any, or contain all the particulars essential to a full and valid notice, and in particular it must describe or identify the lands proceeded against.'' 37 Cyc. p. 1308.

''The purchaser is entitled to a deed to correspond to the notice of sale and to the description in the assessment roll. If there was no definite parcel of land assessed, there was no lien, and there could be no legal sale.'' *Eastman* v. *Gurrey,* 15 Utah, 410 (49 Pac. 310).

''We do hold that the failure to describe or designate in any way what 40 acres the sheriff was offering does render the sale void. One who bids at a tax sale is entitled to know for what precisely he is bidding, and the owner is entitled to have his land so offered, by proper designation, that intending purchasers may be able to bid intelligently and that the part thus sold may bring as much as possible.'' *Nelson* v. *Abernathy,* 74 Miss. 164 (21 South. 150).

''The real question is whether the premises are sufficiently described in the notice, whether they were described in such a manner that the owner, in reading the notice, might ascertain, from the description, that an application would be made for judgment against his lands if the taxes were not

paid. If the lands are not described in such manner that they may be known or identified from the description contained in the notice, the publication of notice required by the statute might as well be omitted. We regard the description of the land as one of the essential elements of the notice, and unless the notice describes the land in such a manner that it may be identified from that description, the court has no jurisdiction to render a judgment against the land." *Pickering* v. *Lomax,* 120 Ill. 289 (11 N. E. 175).

"To hold that, under any circumstances, a man can be deprived of a legal title without a hearing, is impossible, without destroying the entire foundation of constitutional protection to property." *Groesbeck* v. *Seeley,* 13 Mich. 329.

"The notice of sale must describe the lands to be sold. This is the most important of the usual requisites of notice of sale * * *. In the notice, as in the assessment, there is precisely the same necessity that the description shall be sufficiently definite to identify the land in order that the owner may be apprised of the peril to which his interests are exposed." 3 Cooley on Taxation (4th Ed.), § 1416.

The reason for the following conclusions are hereinbefore stated. This is not a suit against the State, but mandamus to the auditor general to compel the performance of a statutory duty. Plaintiff had a contract with the auditor general to publish the list of lands to be sold in 1933, in Ingham county, for delinquent taxes at not to exceed 40 cents per description. The refusal of defendant to perform that contract constituted a breach of contract, which breach was approved by the legislature by Act No. 2, Pub. Acts 1933, and is governed by the rule declared in *Sanilac Supervisors* v. *Auditor General,* cited above.

The power of taxation is legislative in character and the legislature of this State has plenary power over it, subject to the limitations and restrictions imposed by the State and Federal Constitutions; that a uniform rule of taxation except on property paying specific taxes shall be established; the rule of uniformity cannot be violated by the remission of taxes by legislative action, and sales for taxes are subject to the due process clause of the Constitution.

The State may provide for the summary seizure and sale of property to enforce the collection and payment of taxes without recourse to judicial action. All presumptions are in favor of the validity of regular legislative action, though proceedings by which one may be divested of his property should be strictly construed and rigidly followed.

Under Act No. 26, Pub. Acts 1931, governmental units were authorized to borrow money on the faith of the collection of delinquent taxes, and the sale of lands to realize such taxes, under laws existing at the times the notes were issued and sold. A law which impairs the means of realizing upon the contracts of governmental units as agreed impairs the obligation of such contracts for the reasons hereinbefore stated.

The judicial power is vested in the courts, which can only act judicially, in accordance with the Constitution which prescribes the procedural rule of due process of law which implies notice and hearing or an opportunity to be heard before an adjudication may be made which will affect the rights of an interested party. Judicial process giving notice is either actual or constructive. Proceedings for the sale of delinquent tax lands are proceedings *in rem;* constructive service is valid under the law of this State, which makes taxes lawfully assessed a lien against the land, which lien in case such taxes are

not paid may be foreclosed in chancery. The land must be accurately described on the assessment roll, so as to be capable of identification, to be legally assessed, so the lien of the State may attach to each particular piece or parcel of land assessed. The petition to foreclose that lien must particularly describe the land on which a lien is claimed which is sought to be foreclosed, on which it is claimed the taxes are delinquent, and the order of publication must accurately describe the particular lands sought to be sold, in order to give the court jurisdiction to make a valid order of sale of such parcels. The proceeding is one against each parcel of land severally, and the order of publication must describe each parcel separately, in all cases of substituted service, in proceedings against the land, in order to comport with the due process clause of the State and Federal Constitutions.

Publishing the petition of the auditor general, which includes the lists of lands against which petition is filed and the order of publication which refers to the lands described in the petition published, complies with the constitutional requirement. If constructive service is had in a proceeding *in rem,* against lands, the basic question is what lands? This must be answered by the order of publication which constitutes the service, or there is no constructive service which complies with the mandate of due process of law.

It follows that the writ of mandamus may issue, but without costs, the questions involved being of public importance.

McDONALD, C. J., and NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred with POTTER, J.

McDONALD, C. J. (*concurring*). We are all agreed that Justice POTTER has reached a correct

result but two of the Justices are of the opinion that some of the questions disposed of are not properly before the court and should not be decided at this time.

The case presents public questions which require immediate disposition. To postpone a decision of these questions on account of a strict adherence to technical rules of practice may seriously affect the public interests. An emergency exists requiring prompt action on the part of every department of the State government. In view of these existing conditions, strict rules of practice should be relaxed and every question involved in this controversy should be promptly decided.

I am, therefore, following the course taken by Justice POTTER.

CLARK, J. (*dissenting.*) We are in accord that plaintiff is not entitled to relief by mandamus for breach of his contract with the auditor general, which breach has now had legislative approval. *Sanilac Supervisors* v. *Auditor General*, 68 Mich. 659. That should end this lawsuit. But we have been persuaded to express further opinion, merely advisory. In so doing, and in that regard, we ought not to permit plaintiff to prevail on a question he has no legal right to raise, namely, that Act No. 2, Pub. Acts 1933, violates the obligations of contracts of those, if any, who have loaned money pursuant to Act No. 26, Pub. Acts 1931. If money has been loaned to any political subdivision of the State under such act, the obligation of such contract is to the creditor, who may assert its impairment. No one without interest in a contract may complain of impairment of its obligation.

Mandamus should be denied.

SHARPE, J., concurred with CLARK, J.