PLYMOUTH UNITED SAVINGS BANK *v.* TOWNSHIP
OF PLYMOUTH.

1. TAXATION—DESCRIPTION IN ASSESSMENT.
   Generally it is essential to the validity of an assessment that the assessment list or roll should contain a sufficient designation or description of the property intended to be assessed so that the tax lien may attach to each parcel assessed.

2. SAME — ASSESSMENT — DESCRIPTION — NONPREJUDICIAL IRREGULARITY.
   An assessment for taxes will not be held invalid for a nonprejudicial irregularity in description.

3. SAME—ASSESSMENT—DESCRIPTION—SUFFICIENCY.
   The description of land in an assessment must of itself be sufficient to identify the property by a competent person although it need not be a complete description thereof if it clearly refers to some public record or document in which the details of the description may be found (1 Comp. Laws 1929, § 3413).

4. SAME—ASSESSMENT—DESCRIPTION—ABBREVIATIONS.
   The mere employment of abbreviations in the description will not invalidate an assessment.

5. SAME — ASSESSMENT — DESCRIPTION OF IRREGULARLY SHAPED PARCEL.
   Description on an assessment roll of an irregularly shaped piece of property containing 51.616 acres and lying in the east half of a section and south of a railroad right of way and north of a certain highway as west side northeast ¼ of the section containing 50 acres north of the highway and south of the railroad or as part of west ½ northeast quarter of the section excepting 15 acres north of the highway and south of the railroad *held,* void because of indefinite description, the same being so meager that a surveyor could not fix the boundaries with any accuracy.

6. Same—Rejected Descriptions—Statutes—Reassessment.

Statute relative to reassessment of taxes on lands which were rejected by auditor general because of erroneous or indefinite description does not permit of reassessment upon a different description than that contained in the original assessment roll where the description is too indefinite for correction but only authorizes the board of supervisors to reassess the taxes upon the taxable property of the proper township (Act No. 126, Pub. Acts 1933, as amended).

7. Same—Construction of Statutes.

Tax laws are to be construed liberally in favor of the taxpayer.

8. Same—Reassessment—New Description.

Reassessment of taxes which had been rejected for erroneous and indefinite description by making, in effect, a totally new description does not effect a valid reassessment of taxes (Act No. 126, Pub. Acts 1933, as amended).

Appeal from Wayne; Nicol (Henry G.), J. Submitted April 4, 1939. (Docket No. 11, Calendar No. 40,397.) Decided June 22, 1939.

Bill by Plymouth United Savings Bank and others against Township of Plymouth and others to have taxes claimed as a lien against certain property declared null and void, for an injunction and other relief. Decree for plaintiff. Defendants Township of Plymouth, Wayne County Treasurer, County of Wayne, and State Auditor General appeal. Affirmed.

*Goodenough, Voorhies, Long & Ryan,* for plaintiffs.

*Duncan C. McCrea,* Prosecuting Attorney, and *Russell C. Duncan* and *Garfield A. Nichols,* Assistant Prosecuting Attorneys, for defendants.

Chandler, J. The facts in this case are stipullated. In 1924, William H. Minehart, owner of the property involved in this suit, died testate, leaving

certain heirs. In 1925, the executor of his estate mortgaged the property to the Plymouth United Savings Bank, plaintiff herein, and thereafter said estate was closed and the residue assigned to the residuary legatees. The legatees sold the property on land contract to Ralph P. Peckham on January 19, 1926. The correct description of the real estate in question is as follows:

"Beginning at a point in the south line of the Pere Marquette Railroad, right of way at its intersection with the north and south ¼ line of section 25, town 1 south, range 8 east, Plymouth township, and south 1 degree 27 minutes east 49.5 feet from the north ¼ post of section 25, running thence south 88 degrees 08 minutes east 880 feet along south line of Pere Marquette Railroad right of way to a point; thence on a curve to the right 720 feet to a point; thence south 73 degrees 59 minutes east 268 feet to a point; thence south 0 degrees 41 minutes west 53 feet to a point; thence south 89 degrees 53 minutes west 838.80 feet to a point, thence south 1 degree 30 minutes west 2,899.70 feet to a point in the center line of the Plymouth road; thence north 72 degrees 46 minutes west 695 feet along the center line of said road to a point; thence north 0 degrees 38 minutes east 2,187.10 feet to a point; thence north 89 degrees 57 minutes west 306 feet to a point in the north and south ¼ line of section 25, thence north 1 degree 27 minutes east 593.50 feet along said line to the point of beginning, containing 51.616 acres of land in the northeast ¼ and southeast ¼ of said section 25, town 1 south, range 8 east, township of Plymouth, Wayne county, Michigan."

The taxes were assessed to Ralph P. Peckham for the years 1927, 1928 and 1929, together with property in Section 24, under the following description:

"West side northeast ¼ section 25, 50 acres, N. Rd. E. Warren S., P. M. R. R. W. Ratts, sec. 24, 6.5 A. T. 1 S. R. 8 E."

These taxes were unpaid and were returned to the auditor general, who rejected the tax on land on section 25 because of indefiniteness of description. The taxes for these years were reassessed together with current taxes for the years 1930, 1931 and 1932, under the following description:

"Part of west ½ northeast ¼ section 25, excepting 15 acres, N. Rd. E. Warren S., P. M. R. R. W. Ratts, sec. 24, 6.5 A., T. 1 S. R. 8 E."

The land consisting of six and one-half acres located in section 24 is not involved in this suit.

In 1932, plaintiff Plymouth United Savings Bank foreclosed its mortgage and received a sheriff's deed, the property being described therein as first described in this opinion. The deed was duly recorded in the office of the register of deeds for Wayne county on January 23, 1932.

From 1933 to 1937, inclusive, taxes on said property in section 25 were assessed to, and were paid by, the plaintiff bank, the description being by metes and bounds. The taxes for those years are not questioned.

In 1935, the auditor general returned a list of delinquent and rejected taxes to the Wayne county treasurer, pursuant to Act No. 126, Pub. Acts 1933, as amended (Stat. Ann. § 7.231 *et seq.*), and the county treasurer gave a number to each description contained on said list. Included in the list was the property in question, described in two ways; first, as

"Part of west ½ of northeast ¼ and 3 acres in the north end of the northeast ¼, section 25, town 1 south, range 8 east, 50 acres."

In connection with this description, the list showed a delinquent assessment for Covert Road

for 1931 to "Minehart, William, Est.," said description having been prepared by the State highway department. This item was given number 956 by the county treasurer.

The land was also described as,

"West ½ northeast ¼ excepting 15, acres, section 25, 50 acres,

"N. Rd. E. Warren S., P. M. R. R. W. Ratts, sec. 24, 6.5 A., T. 1 S. R. 8 E."

Under this description it was assessed to Ralph Peckham. This description was charged with delinquent taxes for the years 1927 to 1932, inclusive, and was given number 942 by the county treasurer.

In November, 1935, the plaintiff bank requested the county treasurer to furnish a statement of delinquent taxes on said property, describing the same in the identical language used in the assessment roll for 1933. The bank was advised by the treasurer that "a superficial search indicates that there are no delinquent taxes on this property," and requested the bank to obtain from the township treasurer the exact account number covering the property. Upon request, the township treasurer furnished said account number as No. 956, and when this was communicated to the county treasurer on December 5, 1935, a further search disclosed one unpaid tax only, namely, the Covert road tax due under No. 956 amounting to $38.62, and which was paid by the plaintiff bank.

In 1936, the bank sold part of the property to plaintiff, Bessie L. Jones, and conveyed the same by warranty deed. This deed, which described the property by metes and bounds, was recorded June 22, 1936, and before said recording the grantee obtained a certificate from the county treasurer showing all taxes as paid.

In 1937, the bank sold the balance of the property and conveyed by warranty deed to the plaintiffs, Paul and Beatrice S. Christensen, the deed describing the property conveyed by metes and bounds. Prior to the delivery of this deed another search was made at the office of the county treasurer for a statement of delinquent taxes, and the statement furnished showed that the only tax· due was the Covert road tax amounting to $38.62 which the bank paid.

When the bank, on April 12, 1937, forwarded the deed last mentioned to the register of deeds, together with a check for recording fees, the deed and check were returned for the reason that the county treasurer had advised that there were taxes due upon the property for the years 1927 to 1932, inclusive, totaling $2,255.55.

These taxes, which had been rejected by the auditor general for indefiniteness of description, do not appear from the records of the county treasurer's office to have been paid, and no proceedings have been taken to assess the same against the township at large.

In August, 1937, plaintiffs filed a bill in equity to have the taxes claimed for the years 1927 to 1932 declared null and void as a present or future lien against such property, to restrain the defendants from making any claim against the property for the aforesaid taxes, and to have the reassessment of taxes for those years declared illegal and unauthorized. A decree as prayed for by plaintiffs was entered. Defendants appeal.

Was the tax description reading, "W. ½ N. E. ¼ excepting 15 A. Sec. 25, 50 acres, T. 1 S. R. 8 E." void for indefiniteness?

"As a general rule it is essential to the validity of the assessment that the assessment list or roll should contain a sufficient designation or descrip-

tion of the property intended to be assessed." 61 C. J. p. 710.

See, also, *Petit* v. *Railroad Co.*, 114 Mich. 362.

In *Thompson* v. *Auditor General*, 261 Mich. 624, the court held that land must be accurately described on the assessment roll and be capable of identification so that the State's lien may attach to each parcel assessed. See, also, *Detroit Young Men's Society* v. *Mayor, etc. of Detroit*, 3 Mich. 172, holding that to be the basis of a valid tax, the assessment roll must describe the property with certainty.

There are numerous cases in this State where tax assessments and sales thereunder have been held invalid because the properties were inaccurately described on the assessment rolls. In *Petit* v. *Railroad Co.*, *supra*, the property was listed as,

"The west fractional half of the north west quarter of section 15, 16, 17, excepting and reserving the lands heretofore sold to E. Fitzgerald, Smith, Wright, Read and others, and about one and a half acres in the northwest corner, and one and a half acres, being in the Indian Reserve and also the Chicago and Grand Trunk Railway, being about 55 acres."

Of this description the court said:

"The defendant claims several defenses to plaintiff's cause of action. One of them is a tax deed. We agree with the circuit judge that no valid title was obtained by virtue of this deed. The assessment which was the basis of the tax sale did not describe any land, and the description in the deed from the auditor general was fatally defective."

On the other hand, not every defect of description on an assessment roll will invalidate the tax.

"An assessment will not be held invalid for a non-prejudicial irregularity." (*In re Petition of Auditor General*, 282 Mich. 334.)

In 61 C. J. p. 710, it is said:

"Ordinarily, the description must of itself be sufficient to identify the property; but the assessment book need not contain a complete description of the property if it clearly refers to some public record or document in which the details of the description may be found."

Neither will the mere employment of abbreviations in the description invalidate the assessment. *Paris* v. *Lewis,* 85 Ill. 597; *Auditor General* v. *Fleming,* 142 Mich. 12. In the latter case the court said:

"The proper test to be applied as gathered from the authorities is: Is the description sufficiently definite to be identified by a competent person?"

The statute (1 Comp. Laws 1929, § 3413 [Stat. Ann. § 7.25]) indicates that the property should be listed in a manner that "will definitely describe the same." A comparison of the correct description of the property here involved and the descriptions appearing on the assessment rolls during the years 1927 to 1932 compels us to conclude that the taxes for these years were void because of indefinite description. The descriptions on the assessment rolls were so meager that even a surveyor could not fix the boundaries of the property with any accuracy.

Does Act No. 126, Pub. Acts 1933, as amended, authorize the reassessment of taxes on plaintiffs' property for the years 1927 to 1932, said taxes having previously been rejected by the auditor general for indefiniteness of description?

This court has not as yet interpreted this phase of the mentioned statute. A discussion of holdings in various jurisdictions on the subjects of retroactive assessments, assessments of omitted property, curative statutes and reassessments of taxes irregu-

larly assessed is to be found in 26 R. C. L. p. 350 *et seq.* There is some conflict of authority as to the effect of curative statutes which provide for reassessments of taxes which were irregularly assessed.

Appellants cite 1 Comp. Laws 1929, § 3488 (Stat. Ann. § 7.149) to illustrate their contention that it has been the intent of the legislature to reassess taxes upon the same lands, if at all possible. But, in *Auditor General* v. *Fleming, supra,* this identical statute was interpreted. In that case it was claimed, ''That taxes rejected by the auditor general for erroneous or indefinite description cannot be reassessed upon a different description than that contained in the original assessment roll.'' The court upheld that proposition, and said it ''should be applied where the description is too indefinite for correction; in other words, the statute does not authorize boards of supervisors in reassessing taxes to correct descriptions absolutely void for indefiniteness, but only authorizes the board in such cases to reassess the taxes upon the taxable property of the proper township.''

The provisions of Act No. 126, Pub. Acts 1933, as amended, indicate the procedure to be followed in correcting inaccurate descriptions of charged back taxes and reassessing the same. This corrective and reassessment procedure is directed to be followed in those cases where ''the taxes may be legally reassessed.''

Tax laws are to be construed liberally in favor of the taxpayer. *Standard Oil Co.* v. *State of Michigan,* 283 Mich. 85.

The purpose of Act No. 126, Pub. Acts 1933, as amended, was to encourage the payment of delinquent taxes and not to render void taxes valid.

As pointed out above, there are many inaccuracies which are legally insufficient to void the tax alto-

gether as to the particular property involved, and it would seem reasonable to suppose that it was in those cases that the legislature intended reassessments to be made.

In this case the county auditor did more than correct an erroneous description. In effect, he made a totally new description and reassessed the delinquent taxes thereon.

For the foregoing reasons, the decree is affirmed, with costs to plaintiffs.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred.